1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| BENNETT GOLDBERG,<br><br>                                Plaintiff,<br><br>    vs.<br><br><br>BAC HOME LOANS SERVICING,<br>LP; HSBC BANK USA, N.A.,<br><br>                              Defendants. | CASE NO. 13cv0036 JM(BLM)<br><br>ORDER GRANTING MOTION TO DISMISS BREACH OF CONTRACT CLAIM; GRANTING MOTION TO DISMISS REMAINDER OF STATE LAW CLAIMS; GRANTING LEAVE TO AMEND |

17
18
19
20
21
22
23
24

    Defendants Bank of America, N.A., as successor by merger to BAC Home Loans Servicing LP, ("BAC") and HSBC Bank USA, N.A. ("HSBC") move to dismiss all claims asserted in the First Amended Complaint ("FAC"). Plaintiff Bennett Goldberg opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for decision without oral argument. For the reasons set forth below, the court grants the motion to dismiss the breach of contract claim, grants the motion to dismiss the remainder of the state law claims, and grants Plaintiff fifteen days' leave to amend from the date of entry of this order.

25

# BACKGROUND

26
27
28

    On January 8, 2013, Defendants removed this diversity action from the Superior County for the County of San Diego. The FAC, filed on March 22, 2013, alleges eight causes of action for breach of contract, breach of the covenant of good faith and fair

dealing, promissory estoppel, fraud, negligent misrepresentation, violation of the Rosenthal Fair Debt Collection Practices Act, unfair business practices under Bus. & Prof. Code section 17200, and declaratory relief.

Plaintiff's claims relate to a June 2004 two-year adjustable rate mortgage in the amount of $400,000 originally obtained from Countrywide Mortgage and subsequently refinanced through Wilshire Mortgage Corporation ("WMC"). (FAC ¶9). In 2007 Plaintiff's home was severely damaged by the Witch Creek Fire. At that time, WMC informed Plaintiff that he should not make any more payments on the loan "due to the federal government's financial relief program for fire disaster victims." (FAC ¶10). In October 2009, Plaintiff was informed that he did not qualify for federal disaster relief because he had returned to live in the home. (FAC ¶12).

In early 2010, Plaintiff received notice that the servicing of the loan was transferred to BAC. (FAC ¶13). Plaintiff was allegedly unable to obtain information about the status of his mortgage and, on August 23, 2010, Plaintiff commenced an action against BAC in state court alleging, among other things, claims for fraud, negligence and violations of various lending statutes. (FAC ¶16).

On March 27, 2011, Plaintiff signed the First Mutual Settlement Agreement requiring Plaintiff to (1) dismiss the state court action, (2) vacate the property, (3) leave the property in "broom clean" condition, (4) pay and maintain all utilities until Plaintiff vacated the premises, and (5) execute a deed transferring Plaintiff's interest in the property to HSBC. (FAC ¶17). In return, HSBC and BAC were to pay Plaintiff $2,500 within five days after he vacated the property. (FAC ¶18).

In May 2011, allegedly concerned that there were additional liens on the property, the parties entered into a Second Mutual Settlement Agreement. This agreement added one additional condition providing that "HSBC shall have the option of either accepting a deed from GOLDBERGS or proceeding with foreclosure on the PROPERTY." (FAC ¶21). Knowing that there were no additional loans on the property, Plaintiff executed the Second Mutual Settlement Agreement on May 21, 2011

1   and, on May 23, 2011, Plaintiff "sent to Defendants a quit claim deed." (FAC ¶22).[1]

2   By July 14, 2011, Defendants provided Plaintiff with two checks totaling $2,500.

3   (Compl. ¶24). "Defendants never indicated that they rejected the Quit Claim Deed or

4   believed the Quit Claim Deed was unacceptable in any way." (FAC ¶23).

5       At the heart of Plaintiff's claim is the allegation that BAC and HSBC have

6   continued to report to credit reporting agencies that Plaintiff is in default of his

7   mortgage. (FAC ¶24). In August 2012, "one year after accepting the Quit Claim

8   Deed," Plaintiff learned that Defendants intended to foreclose on the property. On

9   November 12, 2012, Defendants filed a Notice of Rescission of a Trustee's Deed Upon

10  Sale. (Defendants RJN Exh. L).

11      On March 11, 2013, the court granted Defendants' motion to dismiss the original

12  complaint and granted Plaintiff leave to amend. (Ct. Dkt. 11). The FAC does not

13  allege any wrongful foreclosure claims. In an opposed motion, Defendants now move

14  to dismiss all claims alleged in the FAC.

15                              **DISCUSSION**

16  **Legal Standards**

17      Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in

18  "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir.

19  1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a

20  "cognizable legal theory" or sufficient facts to support a cognizable legal theory.

21  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should

22  dismiss a complaint for failure to state a claim when the factual allegations are

23  insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp

24  v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly

25  suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 566 U.S. 662 (2009)

26  (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the

27

28      [1] The court highlights that the Quit Claim Deed allegedly sent by Plaintiff to Defendants on May 23, 2011, (FAC ¶22), was executed by Plaintiff on March 30, 2011. (FAC Exh. 3).

1   mere possibility of misconduct). "The plausibility standard is not akin to a 'probability

2   requirement,' but it asks for more than a sheer possibility that a defendant has acted

3   unlawfully." Id. at 678.  Thus, "threadbare recitals of the elements of a cause of action,

4   supported by mere conclusory statements, do not suffice." Id.  The defect must appear

5   on the face of the complaint itself.  Thus, courts may not consider extraneous material

6   in testing its legal adequacy.  Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th

7   Cir. 1991).  The courts may, however, consider material properly submitted as part of

8   the complaint.  Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555

9   n.19 (9th Cir. 1989).

10      Finally, courts must construe the complaint in the light most favorable to the

11   plaintiff.  Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116

12   S. Ct. 1710 (1996).  Accordingly, courts must accept as true all material allegations in

13   the complaint, as well as reasonable inferences to be drawn from them.  Holden v.

14   Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992).  However, conclusory allegations of

15   law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion.  In

16   Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

17   **The Motion**

18      The Parol Evidence Rule

19      The primary issue on several of Plaintiff's claims is whether the alleged oral

20   condition (i.e. that Defendants would accept the quit claim deed in lieu of foreclosure

21   unless there were liens against the property) is barred by the parol evidence rule.

22   Riverisland Cold Storage, Inc. v. Fresno–Madera Production Credit Ass'n, 55 Cal.4th

23   1169, 1174 (2013), explains the basis for the parol evidence rule:

24      It is founded on the principle that when the parties put all the terms of
        their agreement in writing, the writing itself becomes the agreement. The

25      written terms supersede statements made during the negotiations.
        Extrinsic evidence of the agreement's terms is thus irrelevant, and cannot

26      be relied upon.... [T]he parol evidence rule, unlike the statute of frauds,
        does not merely serve an evidentiary purpose; it determines the

27      enforceable and incontrovertible terms of an integrated written
        agreement.... The purpose of the rule is to ensure that the parties' final

28      understanding, deliberately expressed in writing, is not subject to change.
        (Citations and internal quotations omitted.)

- 4 -

See also Casa Herrera, Inc. v. Beydoun, 32 Cal.4th 336, 343 (2004) ("The parol evidence rule ... prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument.") (internal citations and quotation marks omitted).  Moreover, any agreement to modify the terms of a loan agreement must be made in writing. Seacrest v. Sec. Nat. Mortg. Loan Trust 2002–2, 167 Cal.App. 4th 544, 553 (2008) ("An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds.") (internal citations omitted).  However, the parol evidence rule does not render inadmissible proof of a contemporaneous agreement collateral to and not inconsistent with a written contract where the latter is either incomplete or silent on the subject and the circumstances justify an inference that it was not intended to constitute a final inclusive statement of the transaction. See Mangini v. Wolfschmidt, Limited, 165 Cal.App.2d 192, 198–199 (1958).

Application of the parol evidence rule is a two-part analysis: "1) was the writing intended to be an integration, i.e., a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements; and 2) is the agreement susceptible of the meaning contended for by the party offering the evidence?" Wang v. Massey Chevrolet, 97 Cal.App.4th 856, 873 (2002) (quoting Banco Do Brasil, S.A. v. Latian, Inc., 234 Cal.App.3d 973, 1001 (1991).  Here, the Settlement Agreement is an integrated contract, representing the final expression of the parties' intent.  (FAC Exh. 2).  The integration provision provides, in part, that "[t]here are no other agreements, covenants, promises or arrangements other than those set forth herein." (FAC Exh. 2 ¶6).

Plaintiff argues that Defendants "accepted the Quit Claim Deed" once it was faxed/mailed to them on May 23, 2011 and that the condition set forth in the option was satisfied at that point in time.  Plaintiff contends that the oral representation, made at an unidentified point in time by an unidentified individual, provides context to the parties' conduct.  (Oppo. at p.9:24-25).  However, Plaintiff fails to explain the nature

of that context.  At the time of contract formation on May 21, 2011, Defendants expressly retained the ability to either accept the deed  or to seek to foreclose on the property.  There appears to be no basis for Plaintiff's argument that by faxing the Quit Claim Deed on May 23, 2011, Defendants "accepted" the deed in lieu of foreclosure and therefore Defendants could no longer exercise the option in the Settlement Agreement.  Accepting Plaintiff's argument, the alleged "acceptance" contradicts and is at variance with the written agreement.  Further, under Plaintiff's view it appears that there would be no basis for the option because any outstanding liens against the property were easily ascertainable at the time of contract formation.  In fact, Plaintiff alleges that there were no liens on the property as of the date of execution of the Second Settlement Agreement.  (FAC ¶21).  Rather than explain the option, Plaintiff's argument contradicts that express term because, as of the contract execution date of May 21, 2011, Plaintiff alleges that there were no outstanding liens and therefore no basis to amend the First Settlement Agreement.  The oral condition contradicts the express contractual condition that Defendants possessed the ability to exercise the option to seek the remedy of foreclosure.

In sum, the court concludes that the parol evidence rule bars Plaintiff's contradictory oral condition.

The Breach of Contract Claim

At the outset, the court notes the breach of contract claim is premised upon breach of the Second Mutual Settlement Agreement, and not the original agreement. The elements for a breach of contract claim are: (1) existence of a contract; (2) performance of all conditions on the claimant's part or the claimant's excuse for nonperformance; (3) breach by the defendant; and (4) resulting damage to the claimant. See Reichert v. General Ins. Co., 68 Cal.2d 822, 830 (1968).

Plaintiff alleges that the parties entered into the Second Settlement Agreement, Plaintiff performed all obligations, Defendants breached its obligations by failing to record the Quit Claim Deed, and that Plaintiff suffered damages.  (FAC ¶¶27-29).  At

issue is the third element.  The disputed material condition at issue provides: "HSBC shall have the option of either accepting a deed from GOLDBERGS or proceeding with foreclosure on the Property."  (FAC Exh. 2 at p.2).  Plaintiff also alleges that it complied with all its obligations under the  Second Settlement Agreement by dismissing the state court action, vacating the property, leaving the property in a broom clean condition, paid and kept all utilities connected, and provided Defendants with a Quit Claim Deed.  (FAC ¶22).  Plaintiff complied with all his material conditions by approximately early July 2011.  By July 14, 2011, Defendants provided  Plaintiff with checks in the amount of $2,500.  (FAC ¶23).  As the breach of contract claim pled is based upon the oral condition barred by the parol evidence rule, this oral condition cannot serve as a basis for a breach of contract claim.

Although not argued by Plaintiff, nor alleged in the complaint, Plaintiff may still be able to state a breach of contract claim.  Defendants, while in possession of the Quit Claim Deed on May 23, 2011, took no steps to either record the Quit Claim Deed or to foreclose on the property until August 2012 when it sought to foreclose on the property. (FAC ¶24).  The  Second Settlement Agreement provides guidance as to the time frame in which the parties were to comply with the material conditions.  The Second Settlement Agreement provides that the "[t]ime is of the essence for the performance of each and every covenant and the satisfaction of each and every condition." (FAC Exh. 2, ¶17).  Here, Defendants' alleged failure to timely exercise the option of either accepting the Quit Claim Deed or pursuing the remedy of foreclosure may, if alleged, state a breach of contract claim against Defendants. Defendants' one-year delay in exercising the option provided for in the  Second Settlement Agreement appears, if alleged, to violate the time is of the essence provision.

The court also briefly addresses the remaining arguments raised by Defendants in support of their motion to dismiss this claim. First, Defendants argue that the Second Settlement Agreement attached to the FAC is not executed by Defendants and therefore

1   "cannot serve a basis for Plaintiff's claims" because it violates the statute of frauds.

2   (Motion at p. 5:17).  The court rejects this argument and notes that the present pleading

3   motion arises under Rule 12(b)(6), and is not an evidentiary motion pursuant to Rule

4   56.  Discovery will afford the parties an opportunity to explore this claim in further

5   detail to discover whether the parties even executed the contract at issue.  The court

6   also rejects Defendants' argument that the settlement release contained in the  Second

7   Settlement Agreement bars Plaintiff's claims.  Plaintiff's claims arise from events

8   occurring subsequent to executing the settlement release.  The court similarly rejects

9   Defendants' argument that Plaintiff lacks standing to challenge the foreclosure.

10  Plaintiff is not suing for wrongful foreclosure, but for breach of contract.

11       Finally, the court rejects one argument raised by Plaintiff.  Plaintiff argues that

12  Defendant was obligated to accept the Quit Claim Deed when he mailed it to them in

13  June 2011.  The difficulty with this argument is that the contract specifically provided

14  that Defendants had the option of either accepting the deed or proceeding with

15  foreclosure.  In either case, as noted above, Defendants were required to exercise the

16  option in a timely manner.

17       In sum, the court grants the motion to dismiss the breach of contract claim.

18       The Breach of the Covenant of Good Faith and Fair Dealing Claim

19       Plaintiff alleges that Defendants breached the implied covenant of good faith and

20  fair dealing when Defendants failed to record the Quit Claim Deed and sought to

21  foreclose on the property.  This claim is based on the alleged oral representation by an

22  unknown agent of Defendants that they would not "foreclose on the Subject Property

23  unless there were any known liens on the property."  (FAC ¶33).

24       The implied covenant of good faith and fair dealing "is limited to assuring

25  compliance with the express terms of the contract, and cannot be extended to create

26  obligations not contemplated by the contract."  Pasadena Live, LLC v. City of

27  Pasadena, 114 Cal.App.4th 1089, 1094 (2004).  The "implied covenant imposes upon

28  each party the obligation to do everything that the contract presupposes they will do

1    to accomplish its purpose." <u>Careau & Co. v. Security Pacific Business Credit, Inc.</u>, 222

2    Cal.App.3d 1371,1393 (1990).

3    "[A]llegations which assert such a claim must show that the conduct of
     the defendant, whether or not it also constitutes a breach of a consensual
4    contract term, demonstrates a failure or refusal to discharge contractual
     responsibilities, prompted not by an honest mistake, bad judgment or
5    negligence but rather by a conscious and deliberate act, which unfairly
     frustrates the agreed common purposes and disappoints the reasonable
6    expectations of the other party thereby depriving that party of the benefits
     of the agreement.... [¶] If the allegations do not go beyond the statement
7    of a mere contract breach and, relying on the same alleged acts, simply
     seek the same damages or other relief already claimed in a companion
8    contract cause of action, they may be disregarded as superfluous as no
     additional claim is actually stated." <u>Id.</u> at 1395.

9

10       To the extent Plaintiff bases this claim on the alleged oral condition or the failure

11   of Defendants to timely elect to either accept the deed or to seek foreclosure, such

12   violation of an express contractual claim cannot serve as the basis for a breach of the

13   covenant of good faith and fair dealing claim.  <u>See</u>   <u>Pasadena Live</u>, 114 Cal.App.4th

14   at 1094.

15       In sum, the court grants the motion to dismiss this claim.

16       <u>The Remaining State Law Claims</u>

17       The remaining causes of action also appear to arise directly from Plaintiff's

18   arguments that Defendants breached the Second Settlement Agreement, and not from

19   independent duty imposed by law.  As noted in <u>Applied Equipment,</u>

20   Conduct amounting to a breach of contract becomes tortious only when
     it also violates an independent duty arising from principles of tort law. .
21   . . This duty is independent of the contract.... '[A]n omission to perform
     a contract obligation is never a tort, unless that omission is also an
22   omission of a legal duty.' " ( <u>Jones v. Kelly,</u> 208 Cal. 251, 255 (1929).

23       In sum, the court grants the motion to dismiss the breach of contract claim,

24   grants the motion to dismiss the remaining state law claims, and grants Plaintiff 15

25   days' leave to amend from the date of entry of this order.  The court also informs

26   / / /

27   / / /

28   / / /

13cv0036

1  Plaintiff that the failure to state a claim in the Second Amended Complaint will likely

2  result in the dismissal of the complaint with prejudice.

3  **IT IS SO ORDERED.**

4  DATED:  May 30, 2013

5

6  Hon. Jeffrey T. Miller
   United States District Judge

7  cc:          All parties

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13cv0036